IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES RICHARD McCARTY and VICTORIA L. McCARTY, | ) ) | CIVIL NO. 10-00133 JMS/KSC |
| | ) | ORDER GRANTING |
| Plaintiffs, | ) ) | DEFENDANT/COUNTERCLAIM PLAINTIFF GCP MANAGEMENT, |
| vs. | ) ) | LLC AND DEFENDANT GATEWAY CAPITAL PARTNERS, LLC'S |
| GCP MANAGEMENT, LLC, a Utah Limited Liability Company, GATEWAY CAPITAL PARTNERS, JOHN DOES 1-10, and DOE ENTITIES 1-10, | ) ) ) ) ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |
| _____ | ) | |
| GCP MANAGEMENT, LLC, | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| vs. | ) ) | |
| JAMES RICHARD McCARTY, VICTORIA L. McCARTY, | ) ) ) | |
| Counterclaim Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT/COUNTERCLAIM PLAINTIFF GCP MANAGEMENT, LLC AND DEFENDANT GATEWAY CAPITAL PARTNERS, LLC'S MOTION FOR SUMMARY JUDGMENT

# I. <u>INTRODUCTION</u>

Plaintiffs/Counterclaim-Defendants James and Victoria McCarty ("Plaintiffs") own a parcel of land in West Maui (the "Property"). Plaintiffs borrowed $2.8 million from Defendant/Counterclaim-Plaintiff GCP Management, LLC ("GCP") to refinance earlier debt and to finance the construction of a house on the Property. The loan is now in default. Plaintiffs brought this action seeking to (1) void and rescind the loan transaction, (2) bar foreclosure proceedings, and (3) collect damages and attorneys' fees. GCP counterclaimed to foreclose on the Property. GCP and co-Defendant Gateway Capital Partners ("Gateway") (collectively "Defendants") filed a Motion for Summary Judgment, seeking a ruling that Plaintiffs' claims against them fail as a matter of law, and that GCP is entitled to relief on its counterclaim. For the following reasons, Defendants' Motion is GRANTED.

# II. <u>BACKGROUND</u>

## A.    **Factual Background**

The Property is located in West Maui and identified as TMK (2) 4-1-2-8. On August 20, 2008, Plaintiffs borrowed $1.8 million from GCP to refinance an existing loan on the Property and begin construction of a "spec" house on the Property. Defs.' Exs. A & B; Hammond Decl. ¶ 3. Accordingly, Plaintiffs

executed a note in favor of GCP in the principal amount of $1.8 million (the

"Original Note").  Defs.' Ex. A, at 1-4.  In the Original Note, Plaintiffs represented

that "this loan is for commercial use and not for personal, family or household

purposes."  *Id.* at 5.[1]

When GCP made the loan to Plaintiffs, the value of the Property far

exceeded the amount of the loan.  Defs.' Exs. N, O, P, & Q.  Plaintiffs apparently

intended to sell the Property upon completion of the spec house, and did not intend

it to be their primary residence.  Defs.' Ex. S, at 3; Ex. T, at 1; Hammond

Decl. ¶ 24.  GCP expected that Plaintiffs would repay the loan from the proceeds

of the sale of the Property.  Hammond Decl. ¶ 24.

As security, Plaintiffs granted GCP a mortgage on the Property (the

"Original Mortgage").  The Original Mortgage provides that failure to make

timely payments on the Original Note constitutes default and that, if Plaintiffs

default, GCP has the right to foreclose.  Defs.' Ex. B, at 15, 18.  Plaintiffs also

provided GCP with an opinion letter from their attorney opining, among other

things, that (1) the loan is a "commercial bridge loan," (2) the loan documents are

valid and binding on the Plaintiffs, (3) the documents create a valid lien in the

---

[1] Plaintiff James McCarty has been an attorney for over forty years.  Defs.' Ex. K.  He is appearing pro se in this action, and as counsel for Victoria McCarty.

Property, (4) the loan transaction does not violate any laws applicable to the lender or borrower, and (5) that the loan does not put GCP in violation of any state loan broker or lender licensing laws.  Defs.' Ex. C, at 1-2.

On December 11, 2008, Plaintiffs and GCP agreed to increase the amount of the loan to $2.8 million, as evidenced by a Loan Agreement.  As before, the Loan Agreement provided that failure to make timely payments on the Original Note constitutes default, and that if Plaintiffs default, GCP may foreclose.  Defs.' Ex. D, at 2, 21, 24.  Accordingly, Plaintiffs executed an amended note in the principal amount of $2.8 million (the "Amended Note").  In the Amended Note, the Plaintiffs agreed to release GCP from any and all claims then existing or later arising relating to the loan.  They also agreed to waive any and all defenses that they have or may have to the enforceability of the loan documents.  Defs.' Ex. E, at 2.  As security for the increased amount of the loan, Plaintiffs executed an amended mortgage in favor of GCP (the "Amended Mortgage").  Defs.' Ex. F. Plaintiffs also granted GCP a security interest in additional collateral including licenses, contracts, plans, and specifications related to the Property and the Plaintiffs' planned improvements.  Defs.' Ex. G.

GCP funded much of the loan.  Defs.' Ex. H.  GCP owns the note and mortgages; it has not assigned them.  Hammond Decl. ¶ 14.  The loan matured on

4

August 20, 2009.  Plaintiffs have not repaid any part of the loan, and it has been in

default for over a year.  Defs.' Ex. V; Hammond Decl. ¶ 29.  As of July 30, 2010,

Plaintiffs owed GCP $2,721,071.74 in principal, $83,142.11 in interest, and

$280,421.30 in late charges (as well as default interest, and related attorneys' fees

and costs).  Defs.' Ex. V; Hammond Decl. ¶ 30.

Shawn Hammond and Byron Lusk are both members of GCP.

J. McCarty Decl. Ex. 1, at 5.  Neither Hammond nor Lusk are licensed in Hawaii as

"mortgage brokers."  *Id.* at 4.  Similarly, neither GCP nor Gateway are licensed as

mortgage brokers, lenders or underwriters.  *Id.*  According to James McCarty, he

first met Hammond at the Property in 2008, and "Hammond indicated he could

possibly arrange for funding to pay off the existing mortgage and to provide

additional funding to construct a residence on the [Property]."  J. McCarty Decl.

¶¶ 2, 4.  Plaintiffs "always considered that Mr. Hammond was acting in [their]

interest and for [their] benefit."  *Id.* ¶ 5.  Hammond and Lusk "eventually arranged

funding for [Plaintiffs] to pay off [their] existing mortgage and to finance a

construction of a residence on the [Property]."  *Id.* ¶ 6.  Prior to funding for the

Amended Note, Lusk came to the Property and "looked at the project and stated

that '[w]e need to get this loan done' . . . .  He didn't commit to funding the

[Amended Note] at the time, but he said, 'I'll see what we can do.'"  *Id.* ¶ 11.

**B.      Procedural Background**

On February 9, 2010, Plaintiffs filed this suit in the Second Circuit

Court, State of Hawaii, alleging that Defendants: (1) violated Hawaii's mortgage

broker licensing statute, Hawaii Revised Statutes ("HRS") Chapter 454, by acting

as a mortgage broker without a Hawaii license; (2) negligently and in breach of

fiduciary duties made loans they knew Plaintiffs would be unlikely be able to

repay; (3) committed unfair and deceptive trade practices in violation of HRS

§ 480-2 by making a loan they knew or should have known Plaintiffs would not

likely be able to repay; (4) violated the Truth in Lending Act ("TILA"), 15 U.S.C.

 § 1601 et seq., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2601 et seq., and HRS § 454-3.1; and (5) wrongfully threatened to foreclose.

Compl. at 5-9, ¶¶ 21, 24, 26, 27, 31 & 33.

On March 9, 2010, Defendants removed the action to this court,

invoking both federal question and diversity jurisdiction.  On May 10, 2010,

Defendants filed an Amended Answer, and GCP asserted a Counterclaim for

foreclosure.[2]  Defendants then filed this Motion for Summary Judgment (1) on

GCP's counterclaim, asserting its contractual right to foreclose (subject to final

accounting upon confirmation of a foreclosure sale), and (2) seeking judgment on

---

[2] Defendant Gateway did not join the counterclaim.

all of Plaintiffs' claims against both Defendants.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV.  <u>DISCUSSION</u>

The court first addresses the sufficiency of Plaintiffs' claims against Defendants and then considers the merits of GCP's counterclaim seeking foreclosure.

## A.    **Defendants Are Not "Mortgage Brokers" Under HRS § 454-1**

Plaintiffs' primary claim is that the applicable mortgage and note held

8

by GCP is void and unenforceable because neither Hammond nor Lusk (nor either of the corporate defendants, GCP or Gateway) was registered or licensed as a "mortgage broker" as defined under Hawaii law. *See* HRS § 454-8 ("Any contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable."). Plaintiffs seek a declaratory judgment to that effect, as well as monetary damages.

Applicable Hawaii law defines a "mortgage broker" as "a person not exempt under section 454-2 who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly makes, negotiates, acquires, or offers to make, negotiate, or acquire a mortgage loan *on behalf of a borrower seeking a mortgage loan*." HRS § 454-1 (emphasis added).[3] Plaintiffs contend there is at least a genuine issue of material fact that Hammond or Lusk acted -- as agents for GCP -- "on Plaintiffs' behalf" in the loan transactions such that they (or GCP) were acting as unlicensed "mortgage brokers." The court disagrees.

Initially, Plaintiffs are hard pressed to argue that they were misled by

---

[3] HRS Chapter 454 was repealed (effective July 1, 2010) and replaced with the Secure and Fair Enforcement for Mortgage Licensing Act, HRS Chapter 454F. A new term "mortgage loan originator" is defined as "an individual who for compensation or gain or in the expectation of compensation or gain: (1) Takes a residential mortgage loan application; or (2) Offers or negotiates terms of a residential mortgage loan." *See* 2009 Haw. Sess. L. Act 32, §1. The court applies the prior definition in this action. *See id.* § 9 ("[Act 32] shall not affect rights and duties that have matured, penalties that were incurred, and proceedings that were begun before the effective date of the individual's license under this Act.").

Hammond or Lusk, or that they did not know in what capacity they were acting.  It

is undisputed that Plaintiffs provided an opinion letter from their own attorney to

GCP indicating that the loan transaction does not violate any laws applicable to the

lender or borrower, and that the loan does not put GCP in violation of any state

loan broker or lender licensing laws.  They agreed, in the Amended Note, to release

GCP from any and all claims then existing or later arising relating to the loan.

They also agreed to waive any and all defenses that they have or may have to the

enforceability of the loan documents.  Defs.' Exs. C & E.

Even if those documents do not waive Plaintiffs' claims, Plaintiffs

have produced no evidence creating a genuine issue of material fact contradicting

the evidence that neither Hammond nor Lusk (as principals of GCP) acted "on

behalf of" Plaintiffs within the meaning of HRS § 454-1.  Although the Hawaii

Supreme Court in *Beneficial Hawaii, Inc. v. Kida*, 96 Haw. 289, 309, 30 P.3d 895,

915 (2001), indicated that the phrase "on behalf of" is broadly interpreted to mean

"in the interest of" or "for the benefit of" a borrower, this does not mean a lender

(like GCP) automatically acts "on behalf of" a borrower when it lends money to

the borrower.  Rather, it is well established that a lender acts on its *own* behalf in

an arms-length loan transaction (even if a borrower might in some sense "benefit"

from the loan transaction).  *See, e.g.*, *Davidson v. Cook*, 567 F. Supp. 225, 237

10

(E.D. Va. 1983) ("Borrowers and lenders constitute a paradigm instance of parties whose interests are adverse."); *Martin v. Nat'l Bank of Alaska*, 828 F. Supp. 1427, 1437 (D. Alaska 1992) ("The interests of the lender and the borrower are inherently adverse[.]").[4]

   It is irrelevant whether Plaintiffs subjectively "always considered that Mr. Hammond was acting in [their] interest and for [their] benefit."  It is true that, in some sense, Hammond *was* acting for Plaintiffs' "benefit" in that Hammond was -- on behalf of GCP -- loaning Plaintiffs money.  Plaintiffs presumably "benefitted" from the transaction by paying off an existing debt and obtaining financing for construction.  But this does not mean Hammond, Lusk, or GCP was a "mortgage broker."  Instead, the undisputed evidence is that GCP was acting as a lender and Hammond and Lusk were acting as representatives of the lender.[5] There is no evidence that Hammond or Lusk sought to obtain financing for Plaintiffs' needs from any *other* institution besides their own (GCP).  They did not act as "intermediaries" between Plaintiffs and lenders in an attempt to find

---

[4] Similarly, as discussed below, Defendants (as lenders) owe no fiduciary duty to Plaintiffs (as borrowers).  *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature.").  This principle is another reason Defendants were not acting "on behalf of" Plaintiffs for purposes of HRS § 454-1.

[5] Indeed, the uncontradicted evidence indicates that Plaintiffs appear to have had their own "broker" or "brokers" who had some role in connecting Plaintiffs with GCP.  *See* Hammond Dec. at ¶¶ 17, 25.

financing.  Rather, the transaction was a commercial loan negotiated between

Plaintiffs and GCP.  If GCP (through the acts of Hammond or Lusk) is deemed a

"mortgage broker" here, it would mean virtually every lender would also be a

mortgage broker.

Even assuming as true that (1) "Hammond indicated he could possibly

arrange for funding to pay off the existing mortgage and to provide additional

funding to construct a residence" (2) Hammond and Lusk "eventually arranged

funding for Plaintiffs" and (3) Lusk told Plaintiffs "we need to get this loan done,"

these facts cannot establish that either Hammond or Lusk acted as a mortgage

broker.  As Defendants argue, GCP (through Hammond and Lusk) negotiated a

loan with Plaintiffs on GCP's behalf.  GCP loaned its own funds, retained an

interest in the loan, and has never transferred the loan to another entity.  In short,

Plaintiffs have not established a genuine issue of material fact that Defendants

were acting as a "mortgage broker" under Hawaii law.

## B.    No Breach of Fiduciary Duty or Negligence Claims

For similar reasons, Plaintiffs' claims for breach of fiduciary duty and

negligence both fail.  GCP was a lender.  Lenders generally owe no fiduciary

duties to their borrowers.  *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283

Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending

institution and its borrower-client is not fiduciary in nature."); *Miller v. U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting *Oaks Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D. D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted).

Moreover, there are no facts indicating any type of "special relationship" between Plaintiffs and Defendants sufficient to create a fiduciary relationship.  Such a relationship might arise where there is inequality of bargaining power.  *See, e.g.*, *Miller*, 865 P.2d at 543 ("A quasi-fiduciary relationship may exist where the lender has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the lender' advice, and the lender knew the borrower was relying on the advice."). But here it is undisputed that Plaintiff James McCarty has been a licensed attorney

13

for forty years and that he provided an opinion letter from his counsel as to the merits of the transaction.  More importantly, there is no evidence in the record indicating any circumstances other than a lender-borrower relationship between Plaintiffs and Defendants.  Accordingly, Plaintiffs' breach of fiduciary duty claim necessarily fails.

Likewise, lenders generally owe no duty of care sounding in negligence to their borrowers.  *See, e.g.*, *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a matter of law, [a] lender [does] not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.") (citing *Wagner v. Benson*, 161 Cal. Rptr. 516, 521 (Cal. App. 1980) (finding that a lender has no duty to ensure that borrower will use borrowed money wisely)); *Nymark*, 283 Cal. Rptr. at 56 (similar).

## C.      There is No Basis for the HRS § 480-2 Claim

Given the failure of Plaintiffs' primary claims, it follows that Plaintiffs' claim for violation of HRS § 480-2 in Count Three of the Complaint also fails.  Their claim is that Defendants "made loans to [Plaintiffs] when they knew, or should have known, that it was not likely that [Plaintiffs] would be able to repay the loans and that [Plaintiffs] had a likelihood of defaulting on the loans and

14

suffering injury and damage as a result." Compl. at 7.  Plaintiffs allege that these

actions offend "established public policies" and are thus unfair and deceptive trade

practices under § 480-2.

But it has been established that Defendants were not acting as

"mortgage brokers" in violation of Hawaii law, and that lenders generally owe no

duty to a borrower "not to place borrowers in a loan even where there was a

foreseeable risk borrowers would be unable to repay."  *Champlaie*, 706 F. Supp. 2d

at 1061; *see also Sheets v. DHI Mortg. Co., Ltd.*, 2009 WL 2171085, at *4 (E.D.

Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the

borrower's ability to repay the loan . . . .  The lender's efforts to determine the

creditworthiness and ability to repay by a borrower are for the lender's protection,

not the borrower's.'" (quoting *Renteria v. United States*, 452 F. Supp. 2d 910,

922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment

and risk assessment to determine whether or not to accept the loan")).  "[A]s a

general rule, a financial institution owes no duty of care to a borrower when the

institution's involvement in the loan transaction does not exceed the scope of its

conventional role as a mere lender of money."  *Nymark*, 283 Cal. Rptr. at 56.

Here, there is no evidence that Defendants exceeded a role as a lender

of money.  Again, the evidence indicates the parties entered into an arms-length

commercial loan transaction, where Plaintiff-attorney James McCarty provided an opinion letter from his own counsel indicating that (1) the Original Loan is a "commercial bridge loan," (2) the loan documents are valid and binding on Plaintiffs, (3) the documents create a valid lien on the Property, (4) the loan transaction does not violate any laws applicable to the lender or borrower, and  (5) the loan does not put GCP in violation of any loan broker licensing or lender licensing laws.  Defs.' Ex. C.  While the opinion letter is not binding on this court, and was provided for benefit of the lender, it does indicate that Plaintiffs were negotiating at arms-length and that the transaction was between relatively sophisticated parties.  Plaintiffs have countered with no evidence of an unfair or deceptive trade practice.[6]  Accordingly, Plaintiffs have not met their burden to create a genuine issue of material fact.  Defendants are entitled to summary judgment in their favor as to Count Three of the Complaint.

## D.   The TILA and RESPA Claims Fail as a Matter of Law

Plaintiffs also contend Defendants violated TILA and RESPA, and their implementing regulations, by failing to make certain disclosures.  These

---

[6] Plaintiffs point to certain settlement charges or payments made to others during the loan transaction.  *See* Defs.' Ex. I, at 2.  Whether or not these payments are unusual, they were fully disclosed and Plaintiffs admit they inquired about them during closing.  J. McCarty Decl. ¶ 12.  The evidence of the settlement charges alone does not create a genuine issue of material fact as to whether Defendants violated § 480-2.

claims, however, fail because the requirements of those statutes do not apply here.
A transaction is exempt from TILA and RESPA if the loan is primarily for
business or commercial purposes.  *See* 15 U.S.C. § 1603 ("[TILA] does not apply
to . . . (1) Credit transactions involving extensions of credit primarily for business,
commercial, or agricultural purposes[.]");[7] 12 U.S.C. § 2606(a)(1) ("[RESPA] does
not apply to credit transactions involving extensions of credit -- (1) primarily for
business, commercial, or agricultural purposes[.]").  *See, e.g.*, *Daniels v. SCME
Mortgage Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010) ("TILA and
RESPA only apply to consumer loans, not business loans."); *Mauro v.
Countrywide Home Loans, Inc.*, --- F. Supp. 2d ---, 2010 WL 2976506, at *7 (E.D.
N.Y. July 22, 2010) ("As a general matter, when a party obtains a loan in order to
make a profit, that loan is not considered a "personal" loan under TILA" and are
not covered by TILA) (citing cases).

Here, it is undisputed that the loan was "for commercial use and not
for personal, family or household purposes."  Defs.' Ex. A, at 5.  Plaintiffs'
attorney characterized the loan as a "commercial bridge loan."  Defs.' Ex. C, at 1.
And uncontradicted evidence in the record indicates Plaintiffs intended to sell the

---

[7] *See also* 12 C.F.R. § 226.1(c)(1)(iv) (indicating that Regulation Z applies where, among other conditions, "[t]he credit is primarily for personal, family, or household purposes"). Similarly, rescission is a remedy primarily reserved for loans secured by a consumer's "principal dwelling."  12 C.F.R. § 226.23(a)(1).

Property once the "spec" house was constructed.  Hammond Decl. ¶ 24; Defts'. Ex.

S, at 3; Defs.' Ex. T.  There is no evidence indicating that the house was intended

to be, or is in fact, Plaintiffs' "principal dwelling."  Neither TILA nor RESPA

applies here.[8]

Plaintiffs point to HRS § 454-3.1 in support of their claim that TILA

and RESPA can apply to this transaction.  Section 454-3.1 indeed provides that

"[a] mortgage broker and a mortgage solicitor shall comply with all provisions of

the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Equal

Credit Opportunity Act, as those laws currently exist or as they may be amended."

But the court has already determined that Defendants were not "mortgage brokers."

Without that predicate fact, a claim under § 454-3.1 necessarily fails.  Moreover,

even if Defendants were mortgage brokers, the specific exemptions contained in

TILA and RESPA still apply to exempt a commercial loan transaction.  Section

454-3.1 provides no basis for a claim for a violation of TILA or RESPA.

**E.     No Cause of Action for "Wrongful Foreclosure"**

Plaintiffs' final claim is labeled "wrongful threat of foreclosure --

injunctive relief."  The claim states that Defendants "are threatening to foreclose

---

[8] Because TILA does not apply, the court need not address Defendants' alternate
argument that claims for damages under TILA would be time-barred.

on the Property" and that, if allowed to foreclose, "they will cause irreparable harm to the Plaintiffs and their Property."  Compl. at 9.  The claim is for injunctive relief to prevent foreclosure.  To the extent this claim states a separate cause of action to enjoin foreclosure proceedings, it fails.  Plaintiffs admit that the claim depends upon their contention that the note and mortgage are void and unenforceable.  Pls.' Opp'n. at 14.  Because Plaintiffs' Complaint contains no viable basis for voiding the note and mortgage, this claim for injunctive relief also fails.

## F.    GCP's Counterclaim for Foreclosure

The court next addresses whether GCP is entitled to summary judgment on its counterclaim for foreclosure.  The court has supplemental jurisdiction of the counterclaim pursuant to 28 U.S.C. § 1367.

It is undisputed that Plaintiffs/Counterclaim-Defendants executed and delivered the Amended Note and Mortgage to GCP and that GCP holds the Amended Note and Mortgage.  *See* Defs.' Exs. A, B, D, E, F, & G.  Those documents show the existence and terms of the subject loan agreement.  It is also undisputed that the loan is in default, and has been for over a year.  Defs.' Ex. D, V; Hammond Decl. at ¶¶ 29-30.  The counterclaim for foreclosure was filed in this action on May 10, 2010, providing sufficient notification that payment of the debt

19

is due and owing.  GCP is therefore entitled to summary judgment on its

counterclaim for foreclosure.  *See Indymac Bank v. Miguel*, 117 Haw. 506, 520,

184 P.3d 821, 835 (Haw. App. 2008) (explaining that a foreclosure decree is

appropriate where four material facts have been established: "(1) the existence of

the [loan] Agreement, (2) the terms of the Agreement, (3) default by [mortgagor]

under the terms of the Agreement, and (4) the giving of the cancellation notice and

recordation of an affidavit to such effect"); *see also* HRS § 667-1 (providing for

foreclosure by court action).  Thus, because Plaintiffs' Complaint fails to provide

any basis for voiding the loan transaction, the court finds that GCP is entitled to the

issuance of a decree of foreclosure.

　　　　The court requests that GCP provide for the court's approval and

signature an appropriate foreclosure decree setting forth the necessary terms and

conditions to effectuate the foreclosure process.  The parties are to meet and confer

in the selection of a proposed foreclosure commissioner with sufficient experience

in Maui County.  If the parties are unable to agree on a foreclosure commissioner,

each side may propose a commissioner and submit their name and qualifications,

and the court will make the final selection of a commissioner.  A proposed

foreclosure decree and commissioner should be provided to the court by December

8, 2010.

# V.  **CONCLUSION**

For the foregoing reasons, Defendant/Counterclaim Plaintiff GCP Management, LLC and Defendant Gateway Capital Partners, LLC'S Motion for Summary Judgment [Doc. No. 26] is GRANTED.  Defendant/Counterclaim Plaintiff GCP is entitled to issuance of a decree of foreclosure on the Property.  GCP shall provide a proposed form of foreclosure decree with necessary terms and conditions by December 8, 2010.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 17, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McCarty, et al. v. GCP Mgm't, LLC, et al.*, Civ. No. 10-00133 JMS/KSC, Order Granting Defendant/Counterclaim Plaintiff GCP Management, LLC and Defendant Gateway Capital Partners, LLC's Motion for Summary Judgment